UNITED STATES of America, Plaintiff–Appellee,

v.

Eric Francis KELLY, aka Frankie Theison, Defendant–Appellant.

Nos. 91–50839, 91–50841.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 6, 1993.

Decided May 19, 1993.

Scott C. Williams, San Diego, CA, for defendant-appellant.

Phillip L.B. Halpern, Asst. U.S. Atty., San Diego, CA, for plaintiff-appellee.

Before: CANBY and NORRIS, Circuit Judges, and TANNER, District Judge.*

WILLIAM A. NORRIS, Circuit Judge:

Eric Kelly challenges his sentence under the Guidelines for counterfeiting steroids. He disputes the district court's measurement of the extent of his fraud and its decision to enhance his sentence for "more than minimal planning" and, at the same time, for his leadership role in the offense. *See* U.S.S.G. §§ 2F1.1(b)(2) & 3B1.1(a). Kelly also argues that the district court erred in counting a misdemeanor conviction obtained without assistance of counsel in its computation of his criminal history score. We affirm.

I

While living in a half-way house in San Diego, Kelly began a two-part conspiracy, stealing and distributing genuine anabolic steroids in order to raise funds for a steroid counterfeiting business he subsequently established in Mexico. During the initial phase of the conspiracy, Kelly contacted legitimate steroid manufacturing businesses, posing as the local sales representative of their various distributors. He placed orders in the distributors' names and then arranged to intercept the shipments. Kelly resold the purloined steroids to various coconspirators across the southwestern United States, and before federal agents interrupted his profitable scheme, made enough money to begin order-

---

* Honorable Jack E. Tanner, Senior District Judge, Western District of Washington, sitting by desig-

nation.

ing pharmaceutical manufacturing equipment to implement the second phase of the criminal enterprise.

In the second phase, Kelly set up a counterfeit steroid manufacturing operation, in which he packaged little vials of cottonseed oil and marketed them as anabolic steroids. He sold the counterfeit drugs in bulk to distributors, charging up to $4 for 1 ml. doses of nandrolone decanoate, and up to $8 for 10 ml. doses of testosterone cypionate. During his first month of operation, Kelly manufactured and sold approximately 8,000 vials of counterfeit steroids, a volume he apparently intended to sustain, since he represented that over the course of a year his business would sell 100,000 vials, with a street market value in excess of $2 million. Seven months into the scheme, Kelly was apprehended. A search of his clandestine laboratory yielded 650 vials of counterfeit steroids. Kelly had also ordered, but not yet received, 29,088 bottles of various sizes.

## II

Kelly's offense level under the Sentencing Guidelines is largely determined by the extent of the loss occasioned by his fraud. *See* U.S.S.G. § 2F1.1(b)(1) ("Fraud Loss Table"). The district court calculated the loss by doubling $182,686, a figure which represents the revenue Kelly would have generated from selling the 650 doses of counterfeit steroid found in his laboratory and 29,088 doses in the vials on order but not yet delivered, each dose valued according to Kelly's published price list. The district court then added to this number the wholesale value of four orders of legitimate steroids, which Kelly had stolen from steroid manufacturers in the first phase of his crime.

■ Kelly challenges the district court's decision to double $182,686, the figure representing his expected revenues. The court gave two reasons for its decision. First, doubling Kelly's quoted prices provided what the district court considered a conservative estimate of retail prices, and the court thought retail prices were a better measure of loss than wholesale prices. Second, the court recognized that the vials it had based its calculation on represented just a fraction

of the business Kelly had done and intended to do, and the court wished in some concrete and calculable way to compensate for its underestimate. We review de novo the district court's legal interpretation of the Guidelines. *United States v. Wilson*, 900 F.2d 1350, 1355 (9th Cir.1990).

■ The Guidelines recognize that a precise determination of the loss may be impossible and allow that "[t]he court need only make a reasonable estimate of the loss, given the available information." U.S.S.G. § 2F1.1 (Application Note 8). We find that the district court's estimate—its doubling of Kelly's expected revenues—is entirely reasonable. Fair market value is the usual measure of loss under the Guidelines, except that a different measurement may be more appropriate when fair market value underestimates the loss to the victims of a fraudulent scheme. *See United States v. Wilson*, 900 F.2d 1350, 1356 (9th Cir.1990); U.S.S.G. §§ 2B1.1 (Application Note 2) & 2F1.1 (Application Note 7). Here, the mark-up to approximate retail value not only approximates fair market value, it also reasonably captures the intended loss to the intended victims—consumers of Kelly's fraudulent steroids—who were expected to pay retail price. That this measure of loss exceeds Kelly's gain from the illegal business is of *no* moment. *Wilson*, 900 F.2d at 1356.

On appeal, Kelly challenges not only the district court's methodology, but also its factual determination that doubling Kelly's prices represents the mark-up to retail. Since Kelly did not raise this aspect in the district court, we will not revisit it here. *See Jovanovich v. United States*, 813 F.2d 1035, 1037 (9th Cir.1987).

## III

Kelly also challenges the district court's decision to impose two upward adjustments to his sentence; one for "more than minimal planning," *see* U.S.S.G. § 2F1.1(b)(2), and one for playing a leadership role in an offense that involves five or more people or is "otherwise extensive." *See* U.S.S.G. § 3B1.1(a). Kelly does not challenge the factual basis for either of these adjustments.

Rather, he contends that the two enhancements impermissibly double-count the same behavior, and that either or both enhancements double-count the behavior that constitutes the underlying offense of conviction, i.e., fraud.

 Kelly's first argument is controlled by *United States v. Christiansen*, 958 F.2d 285, 288 (9th Cir.1992), where we held that if different enhancements stem from different concerns, both can be simultaneously applied. Here, the "more than minimal planning" enhancement describes the complexity of the overall scheme. As a sophisticated fraud, Kelly's conspiracy is more harshly punished than are simple frauds. The leadership enhancement addresses a somewhat different concern, namely Kelly's role within the group of coconspirators. As an organizer or leader, Kelly is more harshly punished than if he had been a follower or a minor player in the same scheme. The two enhancements are sufficiently different that we see no error in applying them in the same case.

Kelly's second argument is that because the crime of fraud is inherently deceptive, it requires either more than minimal planning or someone to play a leadership role in its execution. Kelly's theory assumes that fraud is somehow different from other crimes because it is inherently complex. We are unpersuaded. Fraud can be either simple or complex; it can require extensive planning and leadership, but need not. The district court did not err in imposing either enhancement.

## IV

Finally, Kelly challenges the inclusion, in calculating his criminal history score, of a 1984 misdemeanor conviction obtained without the assistance of counsel. Because Kelly did not raise the issue below, we review for plain error. *United States v. Lopez–Cavasos*, 915 F.2d 474, 475 (9th Cir.1990). We find none.

Kelly had been represented in the misdemeanor case by a lawyer, who was

allowed to withdraw. Kelly was then adjudged not indigent and advised of his right to counsel. The record reflects that he waived that right. Kelly bears the burden of proving the constitutional infirmity of his prior conviction, *United States v. Newman*, 912 F.2d 1119, 1121 (9th Cir.1991), which on this record he has failed to do. We see no plain error.

AFFIRMED.