24 F.3d 251
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Gary J. KEISTER, Defendant-Appellant.
 No. 92-30417.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 3, 1994.
Decided May 4, 1994.
 
 Before: WRIGHT, CANBY and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Gary Keister appeals his jury convictions for conspiracy to commit bank fraud in violation of 18 U.S.C. Sec. 371, thirty-five counts of bank fraud in violation of 18 U.S.C. Sec. 1344, four counts of money laundering in violation of 18 U.S.C. Sec. 1956, and two counts of making false statements to a bank in violation of 18 U.S.C. Sec. 1014. Keister asserts that the district court committed numerous errors requiring reversal and that the cumulative effect of the district court errors denied him a fair trial. Keister also asserts that insufficient evidence exists to uphold his convictions for money laundering and that the court improperly sentenced him under the United States Sentencing Guidelines.
 
 
 3
 We AFFIRM Keister's convictions and sentence.
 
 BACKGROUND
 
 4
 Keister's convictions are founded upon his operation of Augustine Limited (Augustine), a hardware and building materials retail and wholesale establishment. When Keister acquired Augustine in late 1986, he obtained a line of credit from First Interstate Bank of Washington (FIWA). Under the terms of the line of credit agreement, Augustine would submit receivables data daily to FIWA and FIWA would extend credit to Augustine on the basis of Augustine's receivables. The agreement provided that Augustine was to refrain from engaging in any business not reasonably related to its normal business.
 
 
 5
 The crux of the allegations against Keister were that: (1) he falsified receivables data to increase the availability of funds under Augustine's line of credit; (2) he funneled money advanced under Augustine's line of credit through other business entities under his control and then redirected the funds into Augustine as injections of new capital, which the terms of the line of credit agreement required him to make; (3) he used Augustine's line of credit to provide credit to other business entities under his control in violation of the line-of-credit agreement.
 
 
 6
 A jury convicted Keister of all but three of the counts in the indictment, acquitting him of two counts that involved transactions that occurred while he was out of the country and one count of making false declarations in bankruptcy.
 
 I.
 
 7
 On appeal, Keister argues that we must reverse his convictions because of prosecutorial misconduct. He asserts that the prosecutor made improper references to the guilty plea of indicted coconspirator Sherry Jones. In conjunction with this argument, Keister asserts that the prosecution's display of a redacted version of the indictment on an overhead during its direct examination of Jones constituted prosecutorial misconduct as an improper use of the indictment and as a way of emphasizing Jones's guilty plea. We conclude that the use of the redacted indictment was not misconduct and that any improper references to Jones's guilty plea were harmless because of the district court's curative instruction.
 
 
 8
 Although the prosecution may not offer the guilty plea of a codefendant as substantive evidence of guilt, it can elicit evidence of the guilty plea of a codefendant testifying as a prosecution witness, even on direct examination, so that the jury may assess the witness's credibility. United States v. Halbert, 640 F.2d 1000, 1004 (9th Cir.1981). Accordingly, there is no dispute that the prosecutor's initial reference to Jones's guilty plea was allowable.
 
 
 9
 Additional references to Jones's guilty plea, however, may have been improper. Nevertheless, an improper use of a codefendant's guilty plea will warrant reversal of a conviction only if not cured by adequate cautionary instructions. See United States v. Rewald, 889 F.2d 836, 865 (9th Cir.1989). Keister does not dispute that the district court instructed the jury on the proper use of a codefendant's guilty plea. That this instruction was not given contemporaneously, but rather was provided in the final charge to the jury makes no difference. Id.
 
 
 10
 We find no misconduct in the prosecution's display of a redacted indictment on an overhead during its questioning of Jones. The prosecutor was using the overhead to identify exactly which transactions it was to which Jones was testifying while on the witness stand. The fact that Jones had pled guilty to the money laundering charge founded upon these transactions does not convert the use of a list of the transactions into an improper use of a codefendant's guilty plea. Keister has provided us with no authority to the contrary.
 
 II.
 
 11
 Keister next argues that the district court improperly limited his cross-examination of Paul Thieme, a prosecution witness who was under investigation for unrelated fraudulent conduct at the time of Keister's trial. We conclude that the district court did not abuse its discretion in allowing the defense to elicit only the fact of the pending investigation of Thieme without allowing inquiry into the details of the conduct underlying that investigation. The jury had ample information from which it could appraise Thieme's biases and motives. For instance, the jury received evidence that Thieme submitted false receivables to FIWA long before Keister acquired Van Daal. The jury also heard evidence that it was Thieme who first suggested that Augustine submit false receivables. Finally, Thieme's involvement in the very activities that formed the basis of Keister's conviction provided ample fodder for his impeachment. See Jackson, 882 F.2d at 1447 (district court's refusal to allow cross-examination regarding wholly collateral specific instances of conduct of a witness did not mandate reversal when the witness's credibility could be adequately impeached by his participation in the activity for which the defendant is on trial).
 
 III.
 
 12
 Keister next objects to the district court's decision to admit evidence of his allegedly fraudulent dealings with William Babcock. Keister asserts that this evidence was inadmissible under Federal Rule of Evidence 404(b) because, according to Keister, its only relevance was to show criminal disposition. We conclude that the evidence was properly admitted for other purposes as provided for in Rule 404(b).
 
 
 13
 We apply a four-part test to determine the admissibility of such evidence: (1) there must be sufficient evidence to support a finding by the jury that the defendant committed the other act; (2) the prior act must not be too remote in time from the commission of the crime charged; (3) the prior conduct must, in cases where used to prove modus operandi or absence of mistake, be similar to the offense charged; and (4) the prior conduct must be introduced to prove an element of the charged offense that is a material issue in the case. See United States v. Miller, 874 F.2d 1255, 1268-69 (9th Cir.1989) (citing United States v. Bailleaux, 685 F.2d 1105, 1110 (9th Cir.1988) and noting modification under the Supreme Court's decision in Huddleston v. United States, 108 S.Ct. 1496, 1499 (1988)).
 
 
 14
 Here, the first three elements of the test were clearly met, and Keister does not contend otherwise. He argues only the relevance or materiality of the prior conduct. But the evidence was relevant to show both modus operandi with respect to Keister's use of the shell corporation Polar Enterprises and absence of mistake with respect to the use of false invoices. The district court properly instructed the jury regarding the proper use of the Babcock evidence. There was no error.
 
 IV.
 
 15
 Keister next argues that his conviction must be overturned because the district court refused his proposed jury instructions concerning modification of contracts. His defense in that regard was that he lacked the requisite intent to defraud the FIWA because he believed he was acting in accordance with the terms of the "modified" line of credit. We conclude that the district court did not err in refusing Keister's proposed instructions. A defendant is not entitled to any particular form of jury instruction so long as the instructions given adequately cover his theory of defense. See United States v. Faust, 850 F.2d 575 (9th Cir.1988) (jury need not be instructed on good faith or agency defenses to fraud); United States v. Green, 745 F.2d 1205, 1209 (9th Cir.1984), cert. denied, 474 U.S. 925 (1985) (defendant not entitled to a good faith defense instruction in addition to instruction on specific intent).
 
 
 16
 This case is like Faust and Green. It is of no consequence whether Keister's defense that he lacked a fraudulent intent is founded upon a legal contract modification or simply an acquiescence by the bank that deprived his activities of fraudulent intent. Either way, the defense was adequately covered by the district court's instruction that "intent to defraud" means to act knowingly and with the specific intent to deceive. The instruction permitted the jury to find that the parties agreed that Keister's activities were not in violation of the line of credit agreement and therefore were not undertaken with an intent to deceive.
 
 V.
 
 17
 Keister next asserts that even if none of the above challenged errors in isolation warrant reversal, we should hold that the cumulative effect of the errors denied him a fair trial. See United States v. Wallace, 848 F.2d 1464, 1475 (9th Cir.1988)). Because we have concluded that at most only one harmless error occurred, there can not have been any "cumulative" error.
 
 VI.
 
 18
 Keister next argues that his convictions for money laundering must be overturned because the evidence was insufficient to support the convictions. We disagree.
 
 
 19
 We will not reverse a conviction for insufficient evidence if, after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The testimony of Sherry Jones regarding the transfers of money between various Keister-controlled entities alone is sufficient to support a jury finding of money laundering. There was ample evidence that Keister fraudulently caused funds to be issued under the FIWA line of credit, that he moved these funds through other entities he controlled, and that he then redeposited them into Augustine's account as capital injections required by the FIWA line of credit agreement. In light of this clear evidence of fraud and concealment, we reject Keister's contention that the money-laundering proscription of 18 U.S.C. Sec. 1956(a)(1)(B)(i) is improperly being applied to transactions not designed to conceal the fraudulent nature of funds. We therefore affirm the money-laundering convictions.
 
 VII.
 
 20
 Finally, Keister urges us to vacate his sentence. He first argues that the district court impermissibly double counted by granting enhancements both for a leadership role and for more than minimal planning. This argument is foreclosed United States v. Kelly, 993 F.2d 702, 704-05 (9th Cir.1993).
 
 
 21
 [I]f different enhancements stem from different concerns, both can be simultaneously applied. Here, the "more than minimal planning" enhancement describes the complexity of the overall scheme.... the leadership enhancement addresses a somewhat different concern, namely [a defendant's] role within the group of conspirators.
 
 
 22
 Id. at 705.
 
 
 23
 Keister next contends that a further upward departure for sophistication of the crime was impermissible. We disagree.
 
 
 24
 A district court may depart upward from the applicable guideline range if it finds there "exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. Sec. 3553(b).
 
 
 25
 The sophistication of the fraud for which Keister was convicted undoubtedly was taken into account by the Sentencing Commission. Section 2F1.1(b) of the guidelines provides for an enhancement for "more than minimal planning," which is defined as "more planning than is typical for commission of the offense in a simple form." U.S.S.G. Sec. 1B1.1, application note 1(f).
 
 
 26
 In an embezzlement, a single taking accomplished by a false book entry would constitute only minimal planning. On the other hand, creating purchase orders to, and invoices from, a dummy corporation for merchandise that was never delivered would constitute more than minimal planning, as would several instances of taking money, each accompanied by false entries.
 
 
 27
 Id. Nevertheless, legal authority to depart exists if, in this case, sophistication existed to a degree not taken into account by the Guidelines. 18 U.S.C. 3553(b). Although the district court's enhancement under section 1B1.1 reflected a finding of more than minimal sophistication, Keister's scheme approached maximum sophistication--a circumstance that would indicate the existence of a factor to a degree not taken into account by the Commission. In light of the evidence presented at trial we conclude that the district court's determination on the level of sophistication in this case is not clearly erroneous. See United States v. Lira-Barazza, 941 F.2d 745, 746-47 (9th Cir.1991) (en banc) (factual findings underlying departure are reviewed for clear error).
 
 
 28
 Finally, we conclude that the two level enhancement was not unreasonable. See id. (extent at departure reviewed for reasonableness). The enhancement resulted in a sentencing range of 33-41 months, instead of a range of 27-33 months. Keister was sentenced to 41 months; the enhancement presumably resulted in an eight-month increase in his sentence. In light of the extent and degree of Keister's criminal activities, this departure was not unreasonable.
 
 
 29
 Accordingly, Keister's convictions and sentence are AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3