46 F.3d 1148
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff/Appellee,
v.
Melvin ROBINSON, Defendant/Appellant.
UNITED STATES of America, Plaintiff/Appellee,
v.
Everett CLEGHORN, Defendant/Appellant.
UNITED STATES of America, Plaintiff/Appellee,
v.
William Raydon AKIN a/k/a Shorty Akin, Defendant/Appellant.
UNITED STATES of America, Plaintiff/Appellee,
v.
Douglas Joseph CARPA, Defendant/Appellant.
 Nos. 93-50634, 93-50673, 93-50640, 93-50647.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted: Dec. 5, 1994.
Decided: Jan. 5, 1995.
 
 Before: BROWNING, ALDISERT* and GOODWIN, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 This is a consolidated appeal by four principals of West Coast Truckers Association from their convictions for conspiracy, mail fraud and wire fraud. They make various contentions on appeal. We affirm the district court in all respects.
 
 
 3
 The four appellants were convicted of defrauding as many as 2,000 truckers into believing that by making monthly payments to West Coast their trucks were covered by liability and cargo insurance. West Coast collected in excess of $1,500,000.00 from truckers but in fact provided no such insurance. To insurance companies, West Coast was represented as a trucking company with a few trucks and in the business of hauling freight. To truckers, it represented itself not as a trucking company but as an association for individual truckers that provided liability and cargo insurance for a fraction of the normal cost.
 
 
 4
 MELVIN ROBINSON at No. 93-50634 at various times represented himself as an owner, managing partner, director, president and president pro tempore of West Coast. He was found guilty of one count of conspiracy, 13 counts of mail fraud and 15 counts of wire fraud. He was sentenced to a 30 month prison term to be followed by three years of supervised release, and a special assessment of $1400.00.
 
 
 5
 EVERETT CLEGHORN at No. 93-50640 was West Coast's senior vice-president and claims manager. He was found guilty of nine mail count frauds and 11 wire fraud counts. He received the same sentence as Robinson.
 
 
 6
 WILLIAM RAYDON AKIN at No. 93-50647 was president of West Coast between 1987 and December 1990. He was found guilty of all 33 counts of conspiracy, mail fraud, wire fraud and willful failure to file income tax returns. He was sentenced to 51 months in prison followed by three years of supervised release, and a special assessment of $1,650.00.
 
 
 7
 JOSEPH CARPA at No. 93-50673 was the insurance broker of record for West Coast. He was found guilty of one count of conspiracy, 13 counts of mail fraud and 14 counts of wire fraud. He received the same sentence as Robinson and Cleghorn.
 
 
 8
 The district court had jurisdiction under 18 U.S.C. Sec. 1231. We have jurisdiction under 28 U.S.C. Sec. 1291 and 18 U.S.C. Sec. 3742. The appeals were timely filed under Rule 4(b) of the Federal Rules of Appellate Procedure.
 
 I.
 
 9
 Robinson, Cleghorn and Carpa argue that there was insufficient evidence to support their convictions.
 
 
 10
 In analyzing the sufficiency of evidence, the question is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). In conducting this analysis, the evidence is viewed in the light most favorable to the government. United States v. Cuevas, 847 F.2d 1417, 1421 (9th Cir. 1988), cert. denied, 489 U.S. 1012 (1989). To sustain a conviction under the mail and wire fraud statutes, there must be sufficient evidence to show that the defendants wilfully participated in a scheme with knowledge of its fraudulent nature and with intent that the illicit objectives be achieved. United States v. Lothian, 976 F.2d 1257, 1267 (9th Cir. 1992).
 
 
 11
 Without detailing a host of evidence, we are satisfied that a rational trier of fact could find that each appellant was a knowing participant in the West Coast fraud.
 
 A.
 
 12
 Robinson made misrepresentations directly to truckers, including Bobby Kitchens, Inc. ("B.K.I."), a large trucking company with which he was also associated, to purchase liability insurance, at a time when he knew that the truckers operated independently except for signing meaningless leases. He made misrepresentations also to an insurance company both before and after the issuance of a policy, to truckers and to West Coast's employees.
 
 B.
 
 13
 As senior vice-president and claims manager, Cleghorn knew of West Coast's fraudulent activities. He was involved with the daily fraudulent activities in the West Coast office when its employees recruited truckers and was designated to speak with truckers when they called complaining of West Coast's lack of insurance coverage. As an officer and manager, his involvement was not merely "clerical." See United States v. Price, 623 F.2d 587, 591 (9th Cir.), cert. denied, 449 U.S. 1016 (1980), overruled on other grounds, United States v. DeBright, 730 F.2d 1255, 1259 (9th Cir. 1984).
 
 C.
 
 14
 Carpa was West Coast's representative to insurance companies. He drafted the language to be used on the certificates of insurance, created insurance documents, placed advertisements in trucker magazines on behalf of West Coast, drafted telephone scripts, solicited truckers and most importantly, issued certificates of insurance which defrauded the truckers into believing that they were covered by liability and cargo insurance regardless of what or for whom they hauled freight.
 
 
 15
 We conclude that sufficient evidence was presented to support the convictions of Appellants.
 
 II.
 
 16
 Robinson complains that the district court abused its discretion when it denied his motion to sever based on the ruling that co-conspirator Akin's deposition testimony could be read to the jury. A motion for severance rests within the sound discretion of the district court. United States v. Ramirez, 710 F.2d 535, 545 (9th Cir. 1983). Robinson's argument fails because the evidence would have been admissible against him even if a separate trial had been ordered. See United States v. Crespo de Llano, 838 F.2d 1006, 1016 (9th Cir. 1987) (The defendant is liable for the substantive acts of his co-conspirators whether he directly participates in such acts so long as the acts were committed pursuant and in furtherance of the conspiracy).
 
 III.
 
 17
 Appellants argue that the district court erred in calculating the amount of loss under Sentencing Guideline Section 2F1.1. The district court's application of the Sentencing Guidelines is reviewed de novo. United States v. Restreppo, 884 F.2d 1294, 1295 (9th Cir. 1989). Due deference is given to the method used by the district court to measure loss. United States v. Wilson, 900 F.2d 1350, 1355 (9th Cir. 1990).
 
 
 18
 The parties do not dispute the applicability of U.S.S.G. Sec. 2F1.1 to these offenses. That guideline sets a base offense level of six for offenses involving fraud or deceit, and provides for an increase in the level "[i]f the loss exceeded $ 2,000." The table that is part of U.S.S.G. Sec. 2F1.1(b) increases the level as the amount of loss increases. The issue here is how much was the "loss."
 
 
 19
 The district court's method of calculating loss was the same for each defendant: West Coast collected in excess of $1.5 million from truckers under the guise of providing them with liability and cargo insurance; the district court used this figure as an estimate of "loss," but pro-rated the amount for the months that each defendant was involved in the fraudulent scheme.
 
 
 20
 The district court was obligated only to "make a reasonable estimate of the loss, given the available information." U.S.S.G. Sec. 2F1.1, comment (n.8); see also United States v. Davis, 922 F.2d 1385, 1392 (9th Cir. 1991). "'Loss' means the value of the property taken." U.S.S.G. Sec. 2B1.1, comment (n.2) (For example, "[i]n the case of a theft of a check or money order, the loss is the loss that would have occurred if the check or money order had been cashed."); see U.S.S.G. Sec. 2F1.1, comment (n.7) (referring to Sec. 2B1.1 commentary).
 
 
 21
 "A product's fair market value ordinarily constitutes an appropriate measure of loss." United States v. Mullins, 992 F.2d 1472, 1479 (9th Cir.) (citation omitted), cert. denied, U.S. , 113 S. Ct. 2997 (1993). Appellants do not argue that the fair market value of the insurance is less than the amount calculated as "loss." Instead, they argue that an alternative method of calculation should be employed. Three of the four appellants raise nearly identical challenges to the district court's calculation of loss under U.S.S.G. Sec. 2F1.1(b). They contend that the calculation of loss must account for the fact that the vast majority of truckers suffered no "actual loss" because they purchased insurance that, as events turned out, they did not need or use. The fourth appellant, Carpa, does not dispute the district court's calculation of loss.
 
 
 22
 The trial court need not exhaustively determine the pecuniary losses and quantify the risks of each potential victim of the fraudulent scheme. It need only use "a realistic, economic approach to determining what losses [West Coast] caused or intended to cause." United States v. Harper, 32 F.3d 1387, 1392 (9th Cir. 1994). The district court's estimate -- funds received by West Coast under the guise of providing truckers with liability and cargo insurance -- is reasonable. Its estimate of loss is approximately one-half the fair market value of the insurance purportedly provided.
 
 
 23
 Fair market value is the usual measure of loss under the Guidelines, except that a different measurement may be more appropriate when fair market value underestimates the loss to the victims of a fraudulent scheme.
 
 
 24
 United States v. Kelly, 993 F.2d 702, 704 (9th Cir. 1993) (emphasis added). Case law suggests the court could have doubled the insurance receipts to reasonably estimate the loss:
 
 
 25
 [A] mark-up to approximate retail value not only approximates fair market value, it also reasonably captures the intended loss to the intended victims -- consumers of ... fraudulent [product] -- who were expected to pay retail price. That this measure of loss exceeds [the defendant's] gain from the illegal business is of no moment.
 
 
 26
 Id. (citing United States v. Wilson, 900 F.2d 1350, 1356 (9th Cir. 1990)).
 
 
 27
 The district court's method is also supportable as a measure of Appellants' gain. Application Note 8 to Section 2F1.1 of the Sentencing Guidelines provides that "[t]he offender's gain from committing the fraud is an alternative estimate that ordinarily will underestimate the loss" (emphasis added). According to an investigation conducted by the I.C.C., West Coast deposited more than $2 million into its bank account during the operation of the scheme, with more than $1.5 million of this amount attributed to monies received from truckers for liability and cargo insurance that West Coast did not, in fact, provide. See United States v. Niven, 952 F.2d 289, 291 (9th Cir. 1991) (Use of a report of an investigatory agency to determine "a reasonable estimate"). The district court's loss calculation was adequate under the circumstances. See generally United States v. Avila, 905 F.2d 295, 298-99 (9th Cir. 1990) (district court's incorporation of Pre-Sentence Investigation Report findings sufficient for purposes of review where adequately supported by the record).
 
 IV.
 
 28
 Robinson contends the court erred in denying the proposed good faith defense instruction. A court's rejection of a proposed jury instruction is either reviewed de novo or for abuse of discretion. The standard of review "is in flux in this circuit." United States v. Gay, 967 F.2d 322, 328 (9th Cir.), cert. denied, 113 S.Ct. 359 (1992).
 
 
 29
 Robinson requested three proposed instructions. Instead, the court gave the following instruction:
 
 
 30
 The good faith of the defendant is a complete defense to the charges of conspiracy, mail fraud and wire fraud ***
 
 
 31
 A person who acts, or causes another person to act, on a belief or an opinion honestly held is not punishable under this statute merely because a belief or opinion turns out to be inaccurate, incorrect, or wrong. An honest mistake in judgment or an error in management does [not] rise to the level of criminal conduct. ***
 
 
 32
 The law is written to subject to criminal punishment only those people who knowingly defraud or attempt to defraud ***
 
 
 33
 In determining whether ... the defendant acted in good faith, the jury must consider all of the evidence in the case bearing on the defendant's state of mind.
 
 
 34
 The burden of proving "good faith" does not rest with the defendant because the defendant does not have an obligation to prove anything in this case. It is the government's burden to prove to you, beyond a reasonable doubt, that the defendant acted with the intent to defraud ***
 
 
 35
 If the evidence in the case leaves the jury with a reasonable doubt as to whether the defendant acted with an intent to defraud ... or, in good faith, the jury must acquit the defendant.
 
 
 36
 G.E.R. at 198-99.
 
 
 37
 Robinson was not entitled to any particular form of instruction so long as the instruction given fairly and adequately covered his theory of defense. United States v. Solomon, 825 F.2d 1292, 1295 (9th Cir. 1987), cert. denied, 484 U.S. 1046 (1988). The given instruction accurately and neutrally stated the defense of good faith.
 
 V.
 
 38
 Robinson argues that the district court lacked subject matter jurisdiction because the I.C.C. Rules and Regulations are spelled out in 49 CFR and there is no authority to bring a federal prosecution under 18 U.S.C. Secs. 371, 1341 and 1343 unless mandated by Title 49 of the Code of Federal Regulations. We review subject matter jurisdiction de novo. Reebok Int'l, Ltd. v. Marnatech Enterprises, Inc., 970 F.2d 552, 554 (9th Cir. 1992).
 
 
 39
 Robinson was charged with conspiracy, mail fraud and wire fraud in violation of 18 U.S.C. Secs. 371, 1341 and 1343, respectively. Consequently, the district court had original subject matter jurisdiction. Robinson's obtuse challenge to the jurisdiction of the district court to hear mail and wire fraud crimes is baseless. This case presents a typical application of the mail and wire fraud statutes of 18 U.S.C. Secs. 1341 and 1343, and the conspiracy to commit those crimes, 18 U.S.C. Sec. 371. The district court had jurisdiction.
 
 VI.
 
 40
 Cleghorn argues that the district court erred when it found that Cleghorn reasonably could have foreseen the illegal acts of his co-conspirators, that he played only a minor role and that his sentence thus should have been reduced. The legality of a sentence is reviewed de novo. United States v. Turner, 898 F.2d 705, 708 (9th Cir.) cert. denied, 495 U.S. 962 (1990). We accept the district court's findings of fact unless clearly erroneous and give due deference to the district court's application of the Guidelines to the facts. Id.
 
 
 41
 Cleghorn argues that because he could not have reasonably foreseen the illegal acts prior to his full-time employment at West Coast, any loss due to fraud during the time period should not be included in his Guidelines calculation. However, his own statements and West Coast checks made out to him during the contested period belie his assertion.
 
 
 42
 Cleghorn argues also that the court clearly erred when it refused his request for a reduction of offense level for his role in the offense. He petitioned the court to reduce his offense level, arguing that he was either a minimal or a minor participant in the West Coast scam. He attempted to mitigate his importance to the functioning of the scam. At trial, however, the government proved that he filled a critical niche and that success of the scam was based, in large part, on his activities. He was West Coast's vice-president and claims manager. He knew that West Coast was neither a trucking company nor an insurance intermediary, as he repeatedly had represented the company. Rather West Coast was a scheme designed to defraud truckers into believing that their monthly payments provided insurance coverage to their trucks and cargo. Cleghorn was not a "minor participant."
 
 VII.
 
 43
 We have considered all arguments advanced by the parties and have concluded that no further discussion is necessary. The judgment of the district court is AFFIRMED in all respects as to each appellant.
 
 
 
 *
 Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3