91 F.3d 156
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Steven HEPBURN, Defendant-Appellant.
 No. 94-50288.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 8, 1996.*
Decided June 28, 1996.
 
 1
 Before: O'SCANNLAIN and TROTT, Circuit Judges; VAN SICKLE,** District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 Hepburn appeals his sentence following convictions for conspiracy and wire fraud. Hepburn was convicted based on his participation in a telemarketing scheme operated by his former employer, Finer Images Co. ("FI"). As part of the scheme, FI salespersons called small business owners and informed them that they had failed to claim a "valuable prize" that FI was holding for them in connection with a company promotion. Victims were told that in order to receive the prize, they needed to purchase "advertising specialties" sold by FI. The advertising specialties consisted of customized pens, baseball caps, t-shirts, and key chains which contained the victim's business name, address and telephone number. Victims who accepted were sent advertising specialties and, in lieu of the promised "bonus prizes," certain "promotional materials" such as inexpensive electronic systems or bracelets. None of the promised "bonus prizes" were awarded.
 
 
 4
 Following his convictions on one count of conspiracy and twenty counts of wire fraud, Hepburn was sentenced to 51 months in prison. He now appeals his sentence, contending that the district court improperly calculated the "loss" caused by his actions and overstated his offense level under U.S.S.G. § 2F1.1.[1] We affirm.
 
 
 5
 * Hepburn first argues that the district court erred with respect to the advertising specialties by granting him an offset (against the total receipts received by FI from victims) in the amount of the wholesale cost of those products. He argues that the appropriate measure of value under the Sentencing Guidelines is fair market value, rather than wholesale cost, and that the district court erred by failing to use fair market value figures which Hepburn himself calculated and provided to the court for the advertising specialties. We reject this argument.[2]
 
 
 6
 Application Note 8 to U.S.S.G. § 2F1.1 states that "[f]or the purposes of subsection (b)(1), the loss need not be determined with precision. The court need only make a reasonable estimate of the loss, given the available information." In addition, Application Note 2 to U.S.S.G. § 2B1.1 (to which application note 7 to U.S.S.G. § 2F1.1 refers on the calculation of "loss") states that "[o]rdinarily, when property is taken or destroyed the loss is the fair market value of the particular property at issue. Where the market value is difficult to ascertain or inadequate to measure harm to the victim, the court may measure loss in some other way, such as reasonable replacement cost to the victim." The Guidelines thus allow for a measure other than fair market value in appropriate circumstances.
 
 
 7
 This court has also refused to apply a strict market standard when calculating loss. For example, see United States v. Wilson, 900 F.2d 1350 (9th Cir.1990), in which the court noted that
 
 
 8
 [o]n their face, the Guidelines provide for alternatives to using a fair market value approach to valuing property and do not require the district court to use only the fair market value when that value is difficult to ascertain.... [W]e reject a strict market valuation approach under the Guidelines and reiterate that where goods have no readily ascertainable market value, any reasonable method may be employed to ascribe an equivalent monetary value to the items.
 
 
 9
 Id. at 1356 (citation omitted) (internal quotations omitted). See also United States v. Kelly, 993 F.2d 702, 704 (9th Cir.1993) ("Fair market value is the usual measure of loss under the Guidelines, except that a different measurement may be more appropriate when fair market value underestimates the loss to the victims of a fraudulent scheme."). Certainly, a measure other than fair market value may be used.
 
 
 10
 In this case, fair market value would have been difficult to ascertain. Hepburn would no doubt disagree--he has provided various estimates of how much it would cost a retail buyer to purchase the products which he and his colleagues sent to their victims. He suggests these estimates show fair market value. However, Application Note 7(a) to U.S.S.G. § 2F1.1 provides that "[i]n a case involving a misrepresentation concerning the quality of a consumer product, the loss is the difference between the amount paid by the victim for the product and the amount for which the victim could resell the product received." (Emphasis added.) Thus, the issue is not the amount for which the fraud victims could have bought the products they received but did not want; rather, the issue is the price for which they could sell these products. In the absence of evidence on this point, the district court was well within its authority when it chose to offset the victims' losses by the wholesale value of the products--which is probably far closer to the price for which the victims could sell than the retail price which professional sellers could receive.
 
 
 11
 For these reasons, we hold that the district court did not err by granting an offset in the amount of the wholesale cost, rather than an amount equivalent to Hepburn's estimates of the fair market value, of the advertising specialties.
 
 II
 
 12
 Hepburn next argues that the district court erred by failing to give him any offset for the value of the promotional materials sent to victims. In light of our ruling regarding the offset for advertising specialties, we conclude that we need not decide this issue, because even if we were to rule in Hepburn's favor he would not be entitled to resentencing.[3]
 
 
 13
 As a general matter, we agree with Hepburn that "actual loss" under the Guidelines probably should be defined as "net loss." Language in a number of our cases supports this proposition. See, e.g., United States v. Hutchison, 22 F.3d 846, 855 (9th Cir.1993) (in case where defendant fraudulently obtained bank loan, court stated that "actual loss" would refer to "the amount of the loan, minus the value of the collateral pledged") (citation omitted); United States v. Galliano, 977 F.2d 1350, 1352 (9th Cir.1992) (discussing "actual loss" in context which suggested that court was referring to "net loss"), cert. denied, 507 U.S. 966 (1993); United States v. Niven, 952 F.2d 289, 291 (9th Cir.1991) (per curiam) (holding that district court's calculation of actual loss which was based on net loss was not clearly erroneous).[4] As Hepburn correctly notes, this conclusion is also supported by Application Note 7 to U.S.S.G. § 2F1.1, as well as such cases as United States v. Mount, 966 F.2d 262 (7th Cir.1992) and United States v. Smith, 951 F.2d 1164 (10th Cir.1991).
 
 
 14
 However, for the reasons discussed above regarding the advertising specialties, it would have been perfectly proper for the district court to grant an offset for the promotional materials only in the amount of the wholesale cost of those materials. Indeed, the case on which Hepburn most heavily relies, United States v. Gennuso, 967 F.2d 1460 (10th Cir.1992), reached a similar result. In Gennuso, a telemarketing company sold water purification systems (which can be analogized to FI's advertising specialties) at much greater than wholesale, and in exchange sent victims "prizes" consisting of a listing of timeshare condominiums (which can be analogized to FI's promotional materials). The district court calculated the loss by granting an offset for the wholesale cost of both the water purification system and the vacation package, and the Tenth Circuit affirmed, finding that the "wholesale price ... seems as reliable an indicia of fair market value as any other in this record." Id. at 1463. We find the court's conclusion equally applicable here.
 
 
 15
 According to the presentence report, the bracelets "cost Finer Images between $38 and $49." Addendum to the Presentence Report at 6. If Hepburn were granted an offset for the bracelets in the amount of $49, the higher of these two cost estimates, the loss calculations would be as follows:
 
 
 16
 $2,313,042.45 ---GROSS LOSS (i.e. gross receipts sent by victims);
 
 
 17
 ($304,488.14) ---less offset for wholesale cost of advertising
 
 
 18
 specialties sent to victims;
 
 
 19
 ($89,523.00) ---less offset for 1,827 bracelets at $49 each;
 
 
 20
 ($169,218.50) ---less offset for wholesale cost of electronic products
 
 
 21
 sent to victims;
 
 
 22
 ($226,263.25) ---less offset for wholesale cost of other promotional
 
 
 23
 materials sent to victims
 
 
 
 $1,523,549.56 ---NET LOSS
 Because this loss figure exceeds $1.5 million, Hepburn's base offense level would increase by 12 levels under U.S.S.G. § 2F1.1(b)(1)(M).[5] This is precisely the increase the district court applied. Accordingly, we need not decide whether the court erred by failing to grant an offset for the value of the promotional materials.
 III
 For the foregoing reasons, we affirm Hepburn's sentence.
 AFFIRMED.
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a), Ninth Circuit R. 34-4
 
 
 **
 The Honorable Bruce M. Van Sickle, Senior United States District Judge for the District of North Dakota, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit R. 36-3
 1 U.S.S.G. § 2F1.1 provides for a base offense level of 6 for cases involving "fraud and deceit," and mandates increases in the base level depending on the amount of loss caused by the fraud.
 
 
 [2]
 We review de novo Hepburn's argument that the district court applied an improper measure of value in calculating loss under the Guidelines. See, e.g., United States v. Kelly, 993 F.2d 702, 704 (9th Cir.1993)
 
 
 [3]
 Hepburn's argument boils down to an assertion that the district court improperly defined "loss" under U.S.S.G. § 2F1.1 by failing to apply a "net loss" standard with regard to the promotional materials. This is a legal question which we review de novo. See United States v. Koenig, 952 F.2d 267, 271 (9th Cir.1991) (applying de novo review to issue of whether district court should have used "intended" or "probable" loss under § 2F1.1)
 
 
 [4]
 See also United States v. Harper, 32 F.3d 1387, 1391 (9th Cir.1994) (mentioning with apparent approval the Tenth Circuit's decision in United States v. Haddock, 12 F.3d 950, 961 (10th Cir.1993), in which that court stated that in calculating actual loss "only net loss is considered" and "anything received from the defendant in return reduces the actual loss")
 
 
 [5]
 We note that the district court could also have properly based the offset for the bracelets on the $38 figure; the loss in such a case would have been $1,543,646.24, which still falls in the range outlined in U.S.S.G. § 2F1.1(b)(1)(M)