**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**William Bernard HARDY,
Defendant–Appellant.**

**No. 01–50328.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 3, 2001.

Filed Feb. 4, 2002.

Amended April 26, 2002.

Thomas P. O'Brien, Assistant United States Attorney, Los Angeles, CA, for the plaintiff-appellee.

Kathryn A. Young, Deputy Federal Public Defender, Los Angeles, CA, for the defendant-appellant.

Before: BEEZER and WARDLAW, Circuit Judges, and SCHWARZER, District Judge.*

**ORDER**

The mandate issued February 26, 2002 is hereby recalled for the purpose of amending the opinion. The opinion filed February 4, 2002 is hereby amended as follows:

At slip opinion page 1768, ¶ 1, at the end of the sentence reading "Had the court valued loss ... and a lower sentencing range," add a new footnote 3:

If each "Titan A.E." DVD is valued at one and twelve hundredths of a cent less than the suggested retail price, the total loss valuation will be less than $70,000 (540 × $26.98 + 2,220 × $24.9688 = $69,999.94). Under this valuation, Har-

---

* The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

dy is potentially eligible for alternative detention as well as a lower sentencing range.

Renumber the original footnote 3 accordingly.

Upon amendment of the opinion, the Clerk is directed to reissue the mandate forthwith.

## OPINION

BEEZER, Circuit Judge.

William Bernard Hardy ("Hardy") challenges his conviction and sentence for knowing possession of property stolen from interstate commerce and conspiracy to possess such property. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We affirm Hardy's conviction, vacate his sentence and remand for resentencing.

### I

Hardy and a partner contacted a broker in an attempt to sell several thousand digital video disks ("DVDs") of two films, one of which was not yet available to the public. Upon learning that the DVDs were stolen goods, the broker agreed to cooperate with authorities and introduced Hardy to an undercover agent masquerading as a potential buyer. After Hardy and the agent worked out terms for a sale, Hardy showed up at the arranged rendezvous with the stolen DVDs and was arrested. Hardy and his partner were jointly tried for knowing possession of property stolen from an interstate shipment of goods, 18 U.S.C. § 659, and conspiracy to knowingly possess such goods. 18 U.S.C. § 371.

The undercover agent testified that Hardy was called away by a page while the two were negotiating a price for the DVDs. The agent further testified that Hardy explained that he and the person who had paged him were jointly engaged in an illicit real estate scheme, and that this person had just been "busted" by federal authorities. Counsel for Hardy's partner objected to this testimony on relevance grounds. The court overruled the objection. Counsel for the government suggested in closing argument that Hardy's comments about the real estate scheme helped establish that he knew the DVDs were stolen.

The district court denied Hardy's motion to acquit for insufficient evidence. The jury convicted Hardy on both counts.

At sentencing, over Hardy's objection, the district court adopted a valuation of the victim's loss based on the DVD manufacturer's testimony as to the retail price of the stolen DVDs. Hardy was arrested while in possession of 540 "True Lies" DVDs and 2,220 "Titan A.E." DVDs. The latter title was not yet available to the public. The manufacturer testified that the unit "retail value" of these titles was $26.98 and $24.98 respectively, and the unit wholesale price was $16.96 for both titles. The district court adopted the retail price for both titles and valued the victim's total loss at $70,024.

Under the applicable Guidelines, Hardy's base offense level is four, but victim's loss in excess of $70,000 raises the offense level by eight. *U.S. Sentencing Guidelines Manual* § 2B1.1 (2000). Had the victim's loss been valued below $70,000, the trial court would have been required to apply a detention range of 10–16 months instead of 12–18 months, *id.* § 5A, and could have considered community or home detention instead of incarceration. *Id.* § 5C1.1(d)(2).

Hardy challenges his conviction, contending that the evidence was insufficient to support a finding that he knew the goods were stolen and that he was unfairly prejudiced by admission of the agent's testimony concerning Hardy's comment about

the unrelated real estate swindle. Hardy also challenges his sentence, contending that wholesale, not retail, price is the proper measure of value for the stolen DVDs.

## II

■ Hardy contends that the evidence was insufficient to allow the jury to rationally conclude beyond a reasonable doubt that he knew the DVDs were stolen. We review de novo the denial of a motion to acquit for insufficient evidence. *United States v. Pacheco–Medina*, 212 F.3d 1162, 1163 (9th Cir.2000). Viewing the evidence in the light most favorable to the government, *see United States v. Wright*, 215 F.3d 1020, 1025 (9th Cir.2000), we conclude that the evidence amply supports the jury's findings.

■ Hardy told the agent during price negotiations that the DVDs were not yet available to the public. He conducted all negotiations in restaurants and parking lots, refused to reveal where the merchandise was stored, put nothing in writing, and demanded cash as payment. He introduced a friend to the agent by a false name and had the friend ask the undercover agent whether she was an undercover police officer or "fed." We conclude without difficulty that a factfinder could rationally infer from these actions and circumstances that Hardy knew the DVDs were stolen. *See Torres v. United States*, 270 F.2d 252, 258–59 (9th Cir.1959); *United States v. Clayton Jackson*, 72 F.3d 1370, 1381 (9th Cir.1995).

Hardy similarly argues that the evidence did not support the knowledge element of his conspiracy conviction. *See United States v. Garcia*, 151 F.3d 1243, 1245 (9th Cir.1998) (requiring proof that defendant knew of conspiracy's object and intended to further it). We conclude that the jury could rationally infer from the evidence previously discussed that Hardy knew, and intended to further, the purpose of the conspiracy to possess the stolen DVDs.

## III

■ Hardy contends that the undercover agent's testimony concerning Hardy's comments about the unrelated real estate scheme should not have been admitted and unfairly prejudiced his defense. The only objection to this evidence at trial was on relevance grounds. We review the denial of a relevance objection de novo. *United States v. Castillo*, 181 F.3d 1129, 1134 (9th Cir.1999).[1] We conclude that the agent's testimony was relevant.

■ Made during negotiations to sell stolen goods, Hardy's seemingly casual comments about his involvement in an unrelated illicit scheme tended to make it more probable that Hardy knew the goods were stolen. The jury could infer, for example, that Hardy was seeking to reassure the agent with his experience in illicit dealings or to impress her with his underworld connections or nonchalance towards possible police interference. The district court did not err in denying the relevance objection.

■ Hardy argues in the alternative that the agent's testimony should have been excluded because its unfair prejudice out-weighed its probative value. *See* Fed. R.Evid. 403. Where no Rule 403 objection was made at trial, we review at our discretion for plain error. *United States v. Serang*, 156 F.3d 910, 915 (9th Cir.1998). We find no error.

---

1. Although Hardy's counsel did not object to the agent's testimony, the objection by his co-defendant's counsel preserved the issue for both defendants. *United States v. Brown*, 562 F.2d 1144, 1147 n. 1 (9th Cir.1977).

■ The challenged testimony was admissible and relevant to prove knowledge and intent. *See* Fed.R.Evid. 404(b).[2] Unfair prejudice could arise only if the testimony caused the jury to convict him on an improper basis, such as a belief that Hardy had a generally bad character. *See id.; United States v. Darryl Jackson,* 84 F.3d 1154, 1159 (9th Cir.1996). Hardy's comments were presented to the jury as only one of several circumstances suggesting Hardy's guilty knowledge in a particular situation, not as proof that Hardy had criminal propensities in general. The agent and the prosecutor each mentioned Hardy's comment only once and in passing. Based on the totality of the circumstances and in light of the rationale behind Rule 403, we conclude that Hardy has not shown that his substantive rights were unfairly affected. The trial court did not plainly err in failing to exclude the evidence *sua sponte* on prejudice grounds.

■ Moreover, other evidence amply supported a finding of guilty knowledge. If any error existed, we conclude that it was harmless. *See United States v. Vizcarra–Martinez,* 66 F.3d 1006, 1017 (9th Cir.1995).

## IV

■ Hardy argues that the district court based his sentence on an improper measure of the victim's loss. We review a district court's interpretation of the United States Sentencing Guidelines, including the method for valuing loss, de novo. *United States v. Kelly,* 993 F.2d 702, 704 (9th Cir.1993). We conclude that the district court used an erroneous method to calculate the victim's loss.

■ "Ordinarily, . . . the loss is the fair market value of the particular property at issue." *U.S. Sentencing Guidelines* § 2B1.1, cmt. n. 2. Although the Guidelines do not define "fair market value," its quotidian definition is that price at which the property would change hands between a willing buyer and a willing seller where both have reasonable knowledge of relevant facts. *See United States v. Cartwright,* 411 U.S. 546, 551, 93 S.Ct. 1713, 1716, 36 L.Ed.2d 528 (1973). The district court may depart from this standard when it appears that "a different measurement [is] more appropriate," such as "when [fair market value] underestimates the loss to the victims of a fraudulent scheme." *Kelly,* 993 F.2d at 704.

■ [4] In Hardy's case, the evidence presented the district court with a choice between two measures of value for the stolen goods: wholesale price and retail price. It is undisputed that the victim, the true owner, intended to sell the goods in the wholesale market. The DVDs were, in fact, still in their original wholesale packaging when Hardy was arrested. Hardy never attempted to sell the goods into the retail market, but sought only to sell to resellers. In valuing stolen goods under the Guidelines, the relevant or "fair" market in these circumstances is the wholesale market and the ordinary measurement of the victim's loss is the value of the goods on the wholesale market. The Sixth Circuit has reached the same conclusion:

> The market value of goods stolen in wholesale lots from a wholesaler should be valued at the actual market value (i.e., the wholesale price) at which that victim offered the goods for sale[,] rather than a fictitious retail price that might have been fixed by a retailer who had purchased the goods (at the whole-

---

**2.** Hardy does not argue that the prosecution failed to provide reasonable advance notice of the nature of other-act evidence to be introduced at trial. *See* Fed.R.Evid. 404(b).

sale price) for resale to an ultimate consumer....

*United States v. Warshawsky*, 20 F.3d 204, 213 (6th Cir.1994) (quoting *United States v. Perry*, 638 F.2d 862, 867–68 (5th Cir. 1981)).

The district court, over Hardy's objections, rejected the wholesale price as the measure of loss and adopted the retail price instead. The court did not give, and we cannot discern, any reason why the retail price is a fairer or more accurate measure of the victim's loss in this case than the wholesale price. No evidence suggested that the wholesale price was more difficult to ascertain than the retail price. No party asserted that the wholesale price underestimated the actual or intended loss to the victim.

■■■ The district court cannot depart from the ordinary measure of loss without justification. "Valuation must be accomplished within the actual situation presented." *In re Taffi*, 96 F.3d 1190, 1192 (9th Cir.1996) (en banc). The district court had a choice of two clear measures of loss based on two different markets, and chose the less appropriate of the two with no reason for doing so. We hold that this choice was error as a matter of law.

The United States argues that *United States v. Lopez*, 64 F.3d 1425 (9th Cir. 1995), supports the district court's choice of retail price as the measure of loss. In *Lopez*, the manufacturer "testified that the fair market value of the [goods] was basically the retail value," *id.* at 1427, and the defendant conceded that the market value of the stolen goods was "difficult to ascertain." *Id.* We held that the district court did not clearly err in finding the goods' retail value to be a better estimate of loss

than wholesale value. *Id.* In contrast, no evidence in the record before us suggests that the retail market price is either more relevant or more reliable than the wholesale price. The question we decide is one of law, not fact: whether and under what circumstances the district court may depart from the fair market value based on the undisputed price of goods in the most relevant market, and instead estimate loss from the claimed value of the goods in another, less relevant market. *See Kelly*, 993 F.2d at 704. Such a departure must be justified by the evidence. In this case, it was not.

■■■ The rule of lenity provides additional support for our holding. "[W]here there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant." *United States v. Bass*, 404 U.S. 336, 348, 92 S.Ct. 515, 523, 30 L.Ed.2d 488 (1971). This rule " 'applies not only to interpretations of the substantive ambit of criminal prohibitions, but also to the penalties they impose.' " *Pacheco–Camacho v. Hood*, 272 F.3d 1266, 1272 (9th Cir.2001) (quoting *Bifulco v. United States*, 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980)). Where, under the Guidelines, two prices are equally good measures of the actual or intended loss to the victim, the district court should select the value bringing the lesser punishment. Had the court valued loss at $25 less, or about $0.01 per DVD, Hardy would have been eligible for community or home detention as well as a lower sentencing range.[3] The district court should have applied the lower, more lenient measure of loss.

The district court's use of the full claimed retail price to measure loss ren-

---

**3.** If each "Titan A.E." DVD is valued at one and twelve hundredths of a cent less than the suggested retail price, the total loss valuation will be less than $70,000 (540 × $26.98 +

2,220 × $24.9688 = $69,999.94). Under this valuation, Hardy is potentially eligible for alternative detention as well as a lower sentencing range.

dered Hardy ineligible for alternate detention and subject to a higher sentencing range. We vacate the sentence and remand for resentencing using the claimed wholesale value as the measure of loss.

AFFIRMED in part, VACATED in part, and REMANDED for further proceedings consistent with this opinion.[4]

---

4. In a separate unpublished order, we have authorized the district court to release Hardy on bail pending resentencing.