[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 10, 2003
THOMAS K. KAHN
CLERK

_____

No. 02-11288

_____

D.C. Docket No. 01-00747-CR-DMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JORGE MACHADO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(June 10, 2003)**

Before BIRCH, CARNES and HUG[*], Circuit Judges.

HUG, Circuit Judge:

_____

[*]  Honorable Procter Hug, Jr., United States Circuit Judge for the Ninth Circuit, sitting by designation.

A trailer containing approximately 132,000 pieces of Connecticut-bound women's underwear was stolen. Investigation of this theft revealed additional plunder stashed in a warehouse rented by Machado, including well over 14,000 stolen blue jeans and 100 computer monitors. Jorge Machado ("Machado") pled guilty to one count of conspiracy to receive stolen goods related to these thefts, in violation of 18 U.S.C. § 371. He appeals his sentence, claiming the district court erred in applying the retail value of the theft rather than the wholesale value as the appropriate standard for calculating loss under United States Sentencing Guildeline § 2B1.1(b)(1).

**I**

Machado does not contest the underlying facts of the theft, or the relevant conduct attributed to him for sentencing purposes. His appeal raises an important, albeit narrow, issue - whether district courts in applying U.S.S.G. § 2B1.1(b)(1) should measure the loss at the retail value or at the loss to the person from whom the goods were stolen.

The presentence investigation report ("PSI") recommended that Machado be held accountable for: (1) 45,000 pieces of women's underwear worth a retail value of $301,538 and a wholesale value of $198,910; (2) 14,000 Levi Dockers jeans worth a retail value of $725,000 and a wholesale value of $308,000; (3) 106 AOC

2

computer monitors worth a wholesale value of $21,836; and (4) cellphone accessories worth a wholesale value of $9,000.[1] The total amount was in excess of $537,746 in wholesale value and $1,055,774 in retail value.

According to the PSI, the objects of the conspiracy involved violations of 18 U.S.C. § 659. Applying the 2000 edition of the guidelines, the PSI recommended that Machado's base offense level of 4 be increased by 13 levels and 2 levels, pursuant to U.S.S.G. § 2B1.1(b)(1)(M) and (b)(4)(A) respectively, because the amount of loss was based on a retail value of $1,055,774 and because the offense involved more than minimal planning.[2] Based on his criminal history category of I, the guideline imprisonment range was 21 to 27 months.

At sentencing the district court adopted the PSI's recommended 13-level increase based on the retail value of the loss under U.S.S.G. § 2B1.1(b)(M). The court rejected Machado's claim that because the goods were stolen from a wholesale dealer and were going to be resold wholesale, a wholesale valuation was more appropriate. The court noted that the legal issue was a close one and that while the Eleventh Circuit had not addressed the issue, several circuits used

---

[1] Retail values were not available for the monitors or cellphone accessories.

[2] The PSI reduced Machado's base offense level by 2 levels and 1 level, pursuant to U.S.S.G. § 3E1.1(a) and (b)(2) respectively, for Machado's acceptance of responsibility and his timely notifying the government of his intention to enter a plea of guilty.

different approaches to calculating loss. The court decided to follow the approach of the Fifth and Eighth Circuits, measuring loss at the retail amount, reasoning that the wholesale amount may result in disparate sentencing for similar criminal acts, that the retail level is simpler than a fact-based inquiry, and that 18 U.S.C. § 659 states that loss can be calculated using the greater of wholesale or retail value. The court sentenced Machado to 21 months' imprisonment.

Jurisdiction is proper before this Court pursuant to 28 U.S.C. § 1291.

## II

This Court reviews the district court's interpretation and application of the sentencing guidelines de novo. United States v. Lewis, 115 F.3d 1531, 1536 (11th Cir. 1997), and the district court's loss calculation for clear error. United States v. Calhoon, 97 F.3d 518, 530 (11th Cir. 1996).

## III

A defendant's base offense level is to be increased based on the amount of the loss of the stolen property involved in the offense. U.S.S.G. § 2B1.1(b)(1). The term "[l]oss means the value of the property taken, damaged, or destroyed." U.S.S.G. § 2B1.1 cmt. n.2 (2000). "Ordinarily, when property is taken . . . the loss is the fair market value of the particular property as issue. Where the market value is difficult to ascertain or inadequate to measure harm to the victim, the court may

4

measure loss in some other way, such as reasonable replacement cost to the victim." Id.

The sentencing guidelines do not specify whether the retail or wholesale value should be used when determining the market value. This Court has not addressed this specific issue. Those circuits that have addressed this issue have taken two different approaches to determine what market is the relevant one for loss purposes pursuant to sentencing enhancement U.S.S.G. § 2B1.1. The approach used by the Fifth and Eighth circuits, and the district court in this case, focus on the sentencing guidelines goal of eliminating sentencing disparity among comparable offenses. United States v. Watson, 966 F.2d 161, 163 (5th Cir. 1992); United States v. Russell, 913 F.2d 1288, 1292-93 (8th Cir. 1990). These circuits held that the retail value was the appropriate measure of value because the use of the wholesale value "would only encourage disparate sentencing for essentially similar criminal acts," particularly in those cases involving several tiers of distribution. Id. at 1293. These circuits also reasoned that because the defendant in each case had been convicted of 18 U.S.C. § 659, which defines value, according to 18 U.S.C. § 641, as "face, par, or market value, or cost price, either wholesale or retail, whichever is greater," the appropriate measure of loss was the greater retail value. Watson, 966 F.2d at 162-63; Russell, 913 F.2d at 1292.

5

Alternatively, other circuits follow an approach that focuses on the particular facts of a case when determining the relevant market valuation. United States v. Hardy, 289 F.3d 608, 613-14 (9th Cir. 2002); United States v. Carrington, 96 F.3d 1, 6 (1st Cir. 1996); United States v. Williams, 50 F.3d 863, 864 (10th Cir. 1995); United States v. Warshawsky, 20 F.3d 204, 213 (6th Cir. 1994). Rather than adopting a universal retail value in calculating loss, these courts determine the market value as that closest to the factual context of the case. Hardy, 289 F.3d at 614 (stating that "[v]aluation must be accomplished within the actual situation presented"); Warshawshy, 20 F.3d at 213 (explaining that where the retail market has no factual connection to the case, it is not an appropriate measure of loss).

We are persuaded by the approach measuring loss within the factual circumstances presented, rather than a universal retail market value. Section 2B1.1 comment application note 2 directs that the loss should be measured from the perspective of the victim. For example, "'[l]oss' means the value of the property taken." U.S.S.G. § 2B1.1 cmt. n.2. The application note does not measure loss as the potential value of the property to be obtained by the defendant. Further, the note states that "[w]here the market value is difficult to ascertain or inadequate to measure harm to the victim, the court may measure loss in some other way, such as

6

reasonable replacement cost to the victim." Id. (emphasis added).[3] The loss to the victim is to be determined within the factual context of the case, utilizing wholesale, retail, or other relative values as the circumstances require. The fair market value as used in § 2B1.1 does not refer to one uniform measure, such as the retail value, but rather the market in which the property was in at the time of the offense.

We are not persuaded by the concern raised by the Fifth and Eighth Circuits that a factual-based measurement encourages disparate sentencing for essentially similar criminal acts. These are not essentially similar acts because the harm to the victims may vary widely. Uniformity is no doubt a goal of the sentencing guidelines, but so too are the principles of fairness and accuracy. Section 2B1.1 goes to great lengths in tailoring the sentencing enhancements based on the value of the property stolen, ranging from enhancements in the base offense level by 2 for losses more than $5,000, and by 26 levels for losses exceeding $100,000,000. U.S.S.G. § 2B1.1(b)(1) (2002). Utilizing a retail value approach without considering the factual context of the case increases the possibility that some defendants may be over-sentenced for an offense.

---

[3] We observe that the application notes to the 2002 version of § 2B1.1 describe the determination of loss in greater detail, but comment 2(C) maintains the measure of loss as a fact based inquiry from the perspective of the victim. U.S.S.G. § 2B1.1 cmt. n.2 (2002).

The district court erred in measuring loss on the basis of the retail value of the property without considering the factual circumstances of Machado's case. The loss should be measured from the perspective of the victim. We REVERSE and VACATE the district court's sentencing determination, and REMAND to the district court to determine Machado's sentence consistent with this opinion.