[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**July 01, 2005**
**THOMAS  K. KAHN**
**CLERK**

_____

No. 04-14399

_____

D. C. Docket No. 03-00058-CR-RH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BRYCE JONATHAN WASIELAK,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(July 1, 2005)**

Before BLACK and HULL, Circuit Judges, and O'KELLEY[*], District Judge.

PER CURIAM:

_____

[*]Honorable William C. O'Kelley, United States District Judge for the Northern District
of Georgia, sitting by designation.

Defendant Bryce Wasielak appeals his 24-month sentence imposed after he pled guilty to conspiracy to receive, possess, and sell stolen motor vehicles, in violation of 18 U.S.C. § 2313.  After review and oral argument, we affirm.

## I. BACKGROUND

On February 9, 2004, Wasielak pled guilty to one count of conspiracy to receive, possess, and sell stolen motor vehicles, in violation of 18 U.S.C. § 2313. At that time, he also admitted to the facts listed in the indictment as "OVERT ACTS" committed in furtherance of the conspiracy.

Wasielak admitted to these facts as set forth in the indictment.  Beginning in April 2002 and continuing until May 7, 2003, Wasielak sold to his co-defendant and co-conspirator Michael Califiore a variety of stolen all-terrain vehicles (ATVs).  Wasielak sold to Califiore a total of 12 stolen ATVs, including eight Polaris brand ATVs stolen from Haven's Motorsports in Bolivar, Missouri; three John Deere "Gator" ATVs of unspecified origin; and one other unidentified ATV possessed by Wasielak on May 7, 2003.

The Pre-Sentence Investigation Report (PSR) recommended that for sentencing purposes Wasielak should be held accountable for a total of 25 ATVs. In addition to the 12 ATVs included in the indictment and admitted to by Wasielak, the report listed the following ATVs: four additional Polaris brand

2

ATVs that had been stolen from Haven Motorsports in Bolivar, Missouri at the same time as the eight ATVs listed in the indictment; six Yamaha ATVs, which had been stolen from Mid-South Motorsports in Jasper, Tennessee at the same time as the single Yamaha ATV Wasielak possessed on May 7, 2003;[1] two Arctic Cat ATVs stolen from Gnann's Fix-it Shop in Springfield, Georgia; and one Honda ATV stolen from a private individual.

Under U.S.S.G. § 2B1.1, the PSR assigned Wasielak a base offense level of six. Based upon the retail value of the 25 ATVs listed, the PSR calculated the "total intended loss" at $149,908.85. Because this amount was greater than $120,000.00, U.S.S.G. § 2B1.1(b)(1)(F) required a 10-level increase, to level 16. After a three-level reduction for acceptance of responsibility, Wasielak's adjusted offense level was 13. Wasielak's criminal history score of III and adjusted offense level of 13 resulted in a Guidelines range of 18-24 months' imprisonment. In addition, the PSR recommended that Wasielak pay $82,890.39 in restitution to the

---

[1]The PSR identifies the ATV possessed on May 7, 2003 (and listed in the indictment) as a Yamaha ATV stolen from Mid-South Motorsports. However, the PSR is inconsistent on the number of Yamaha ATVs stolen from Mid-South. When reciting the offense conduct, the PSR indicates that when Wasielak was arrested on May 7, 2003 he was in possession of one Yamaha ATV, stolen from Mid-South. It then states that there were "**eight** other [ATVs]" stolen from Mid-South, which would result in a total of nine ATVs stolen from Mid-South. (Emphasis in original.) However, in its calculation of the loss amount, the PSR indicates that the calculation is based upon "seven Yamaha ATVs stolen from Mid-South." Although it has no impact on our analysis whether the total is nine, eight or seven, we will assume that the total number of ATVs stolen from Mid-South was seven.

victims of the thefts.

In response to Wasielak's objection at sentencing, the district court determined that the Supreme Court's decision in <u>Blakely v. Washington</u>, __ U.S. __, 124 S. Ct. 2531 (2004), applied to the Federal Sentencing Guidelines, and that "the result of application of <u>Blakely</u> is that the guidelines are not binding." Applying the Guidelines <u>in an advisory manner</u>, the district court found that the amount of loss attributable to Wasielak was over $120,000.00, and that the Guidelines range was thus 18-24 months.[2]

The district court then noted that Wasielak's mother was seriously ill and that Wasielak was his mother's primary care-giver. The district court ultimately sentenced Wasielak to 18 months' imprisonment, with the first six months of that

---

[2]In calculating the loss amount, the district court found that the ATVs taken from shops in Missouri and Tennessee at the same time as ATVs listed in the indictment should be included in the loss calculation. In addition, the district court ruled that the retail value was the correct measure of the loss because most of the ATVs were taken from a retail floor.

However, the district court indicated that it would not count one ATV listed in the PSR because it was not sufficiently connected to the crimes in the indictment. Wasielak's defense counsel indicated that the single ATV would not "alter the loss scoring" under the Guidelines. The district court then asked Wasielak's counsel if any of the ATVs other than the ones stolen from the two shops in Missouri and Tennessee would affect the Guidelines range, as follows:

> District Court: All right. Given my conclusion that, if [Wasielak] gets eight [ATVs] from one shop, he gets the other four from the other shop, and the retail value is correct, then none of the rest of it affects the scoring. Is that what you're telling me?
> Defense Counsel: Right. What I was going to say, the loss – the calculated loss of 149,000, we have to get down below $120,000 for it to make a difference.
> District Court: And there's not enough in that category to make a difference. Okay. . . .

4

sentence being home detention in order to take care of his mother.  The district court stated that "aside from the situation with Wasielak's mother, this would be a 24-month sentence."  In addition, the district court imposed $82,890.39 in restitution, for which Wasielak and Caliafiore are jointly and severally liable.

Wasielak timely appealed his sentence.

## II. DISCUSSION

Wasielak raises the following three issues on appeal: (1) whether his sentence violates Blakely as applied to the Federal Sentencing Guidelines in United States v. Booker, – U.S. – , 125 S. Ct. 738 (2005); (2) whether the district court erred in determining the amount of loss attributable to Wasielak under the Guidelines; and (3) whether the district court erred in determining the amount of restitution.[3]

## A.  **Blakely/Booker Issue**

As to Wasielak's argument under Blakely, now Booker, we find no reversible error.  Initially, we note that because of the district court's remarkable foresight in considering the Guidelines as merely advisory and non-binding, there

---

[3]In a footnote in his reply brief on appeal, Wasielak asserts for the first time that the restitution order violates Booker and Blakely.  However, because this issue was not raised in Wasielak's initial brief on appeal, it is deemed waived.  See, e.g. United States v. Sears, __ F.3d __, 2005 WL 1334892, at *1 (11th Cir. June 8, 2005) (issue raised for first time in reply brief is waived); United States v. Thomas, 242 F.3d 1028, 1033 (11th Cir. 2001) (same).

is no Sixth Amendment violation in this case. We have held that under <u>Booker</u>, a defendant's "Sixth Amendment right to trial by jury is violated where <u>under a mandatory guidelines system</u> a sentence is increased because of an enhancement based on facts found by the judge that were neither admitted by the defendant nor found by the jury." <u>United States v. Rodriguez</u>, 398 F.3d 1291, 1298 (11th Cir. 2005) <u>cert. denied</u>, __ U.S. __, __ S. Ct. __, 2005 WL 483174 (June 20, 2005). In this case, the district court did not sentence Wasielak based upon a mandatory Guidelines system. Rather, the district court indicated that its view of <u>Blakely</u> rendered the Guidelines non-binding. Specifically, the district court stated that

> As I indicated in earlier cases, my view is that <u>Blakely</u> does apply to the United States Sentencing Guidelines; . . . that the result of application of <u>Blakely</u> is that the guidelines are not binding. They nonetheless should be considered by a judge in deciding where to impose a sentence at any point up to the statutory maximum.

Although the district court increased Wasielak's sentence based on judicial fact-finding as to the amount of loss, there was no <u>Booker</u> error because the district court did not apply the Guidelines in a mandatory fashion. <u>See</u> <u>Rodriguez</u>, 398 F.3d at 1298 (discussing importance of the mandatory-nature of the Guidelines in establishing <u>Booker</u> error).[4]

---

[4]We also reject Wasielak's arguments that he should get a new sentencing hearing because the district court did not explain its sentence within the framework of 18 U.S.C. § 3553(a) and Wasielak's attorney was not permitted to argue expressly the § 3553(a) factors. <u>See</u> <u>United States v. Robles</u>, – F.3d – , 2005 WL 1083487, at *4 (11th Cir. May 10, 2005)

## B.    Amount of Loss

Even under the advisory Guidelines regime post-Booker, we are required to

review the district court's Guidelines calculations to determine if the district court

properly consulted the Guidelines, albeit in an advisory manner.  See United States

v. Crawford, __ F.3d __, 2005 WL 1005280, at *3-9 (11th Cir. May 2, 2005).

Therefore, we must also address Wasielak's contention that there was insufficient

evidence to support the district court's amount of loss calculation, which resulted

in a 10-level increase under the Guidelines.

Wasielak challenges both the district court's decision to use the retail value

of the stolen ATVs in its calculation of the loss, and the district court's attribution

to Wasielak of several ATVs not included in the indictment.  We find no reversible

error with respect to either argument.[5]

_____

(stating that even post-Booker, "we would not expect the district court in every case to conduct an accounting of every § 3553(a) factor . . . and expound upon how each factor played a role in its sentencing decision.").  Moreover, the district court, if anything, fully considered the substance of the § 3553(a) factors, such as the seriousness of the offense and the history and characteristics of the defendant, and individualized Wasielak's sentence accordingly, under an advisory Guidelines system. For example, in sentencing Wasielak above the minimum sentence allowed by the Guidelines range, the district court noted that it believed that Wasielak's crime actually deserved a higher sentence, and his mother's illness was the only factor leading the district court to allow for home detention.  In addition, Wasielak has pointed to no relevant mitigating evidence that would have been introduced by his attorney at a new sentencing hearing that was not already before the district court.

[5]We review a district court's fact findings under the Guidelines for clear error, while we review the district court's application of the Guidelines to those facts de novo.  See, e.g., United States v. Hall, 46 F.3d 62, 63 (11th Cir. 1995).  "For a factual finding to be 'clearly erroneous,' this court, after reviewing all of the evidence, must be left with a definite and firm conviction

First, the district court did not err in using the retail value of the ATVs to estimate the amount of loss.[6] The commentary to U.S.S.G. § 2B1.1 indicates that the district court is responsible for determining the value of stolen items, and "reasonably estimat[ing]" the amount of the loss. U.S.S.G § 2B1.1, comment 3(A), (C). The commentary also states that the district court is in the best position to evaluate the evidence and make a determination based on factors such as fair market value, and thus the district court's decision is entitled to due deference. Id., at cmt. 3(C); see also United States v. Machado, 333 F.3d 1225, 1227-28 (11th Cir. 2003). This Court has observed that the fair market value, for purposes of U.S.S.G. § 2B1.1, "does not refer to one uniform measure, such as the retail value, but rather the market in which the property was in at the time of the offense." Machado, 333 F.3d at 1228.

Wasielak argues that the wholesale price of the ATVs in this case would be a better measure of their value. But Wasielak's argument is belied by the facts. Almost all of the ATVs in this case were stolen directly from retailers. The others were stolen from individuals or small businesses who had purchased the ATVs on

_____

that a mistake has been committed." U.S. v. Rodriguez-Lopez, 363 F.3d 1134, 1137 (11th Cir. 2004) (quotation marks and citation omitted).

[6]Wasielak does not challenge the figures used in the PSR and by the district court, and effectively concedes that the numbers themselves are accurate measures of the retail value. Instead, he disputes whether retail value, in general, is the proper measure of loss under the Guidelines.

the retail market, and would procure a replacement on the retail market. Thus, we conclude that the district court did not err in utilizing the retail value of the ATVs in order to estimate the amount of loss.

Second, the district court did not clearly err in its factual determination as to the number of ATVs for which Wasielak should be held accountable. Wasielak pled guilty to a conspiracy involving 12 specific ATVs. Among these 12 ATVS were eight Polaris ATVs stolen from Haven's Motorsports in Bolivar, Missouri. According to the PSR, four other Polaris ATVs were stolen from that same store on the same day and at the same time as the eight listed in the indictment.

Similarly, one ATV listed in the indictment was a Yamaha ATV stolen from Mid-South Motorsports in Jasper, Tennessee.[7] The PSR reflects that at least six other Yamaha ATVs were stolen from the same location on the same day and at the same time. In addition, the district court was aware that Wasielak's cell phone records indicated that calls had been made from his phone in Jasper, Tennessee, in the days prior to the theft, and the owner of Mid-South Motorsports had picked Wasielak's picture out of a photo line-up, identifying Wasielak as a person who had been in the store the day before the theft.

In light of this strong circumstantial evidence, we cannot say that the district

---

[7]As noted above, this ATV was listed in the indictment as the ATV Wasielak possessed on May 7, 2003.

court clearly erred in concluding that Wasielak should be held responsible for these additional ATVs.

As the district court noted and as Wasielak's counsel conceded at the sentencing hearing, the other three ATVs included in the PSR and not in the indictment do not affect the Guidelines range.[8] Thus, we conclude that the district court did not err in its determination that the amount of loss exceeded $120,000.00 and that, therefore, a 10-level increase was warranted under U.S.S.G. § 2B1.1(b)(1)(F).

## C. Restitution

As noted above, the district court ordered Wasielak to pay restitution totaling $82,890.39, based upon the actual loss sustained by the owners of all 25 ATVs listed in the PSR.[9] On appeal, Wasielak challenges the district court's authority to order restitution in this case and, in the alternative, Wasielak argues that if restitution is proper, the amount is too high. We address these arguments in

---

[8]The value of the 12 ATVs listed in the indictment, plus the 10 ATVs discussed above that were stolen at the same place and time as ATVs listed in the indictment is as follows: 12 Polaris ATVs stolen from Haven Motorsports, $68,515.00; seven Yamaha ATVs stolen from Mid-South Motorsports, $41,791.00; two John Deere Gator ATVs listed in the indictment, $13,798.00; one other John Deere Gator ATV listed in indictment, $6,434.66. The total value of these 22 ATVs amounts to $130,538.66, well over the $120,000.00 required under U.S.S.G. § 2B1.1(b)(1)(F) for the 10-level increase Wasielak received.

[9]The total restitution value is lower than the § 2B1.1(b) "intended loss" because the restitution amount is based upon actual loss, as opposed to intended loss. The figure thus includes several set-offs, including the salvage value of the recovered ATVs.

turn.

Wasielak contends first that he should pay no restitution because any harm done to the victims in this case flowed not from the "conspiracy to possess" the stolen vehicles, but from the theft itself. According to Wasielak, because he was not convicted of the theft, his crimes caused no harm to the rightful owners of the ATVs. We disagree.[10]

In this case, the district court was required by statute to "order restitution to each victim in the full amount of each victim's losses." 18 U.S.C. § 3664(f)(1)(A). In cases involving crimes of conspiracy, the statute requires restitution be paid to "any person directly harmed by the defendant's criminal conduct in the course of the . . . conspiracy. . . ." 18 U.S.C. § 3663A(a)(2). In addition, under our precedent, a district court may order restitution "for losses which result from acts done in furtherance of the conspiracy of which the defendant is convicted." United States v. Obasohan, 73 F.3d 309, 311 (11th Cir. 1996). A "defendant is liable for reasonably foreseeable acts of others committed in furtherance of the conspiracy. . . ." United States v. Alas, 196 F.3d 1250, 1251 (11th Cir. 1999). We agree with the government that "[t]he actual theft of the vehicles is the most obvious and

---

[10]"We review the validity of a restitution order for abuse of discretion." United States v. Alas, 196 F.3d 1250, 1251 (11th Cir. 1999). The district court's factual findings as to the amount of restitution are reviewed for clear error. United States v. Shugart, 176 F.3d 1373, 1375 (11th Cir. 1999).

11

foreseeable consequence of a conspiracy to possess stolen vehicles." The district court did not abuse its discretion by ordering restitution in this case.

Also, despite Wasielak's argument that he should not be held accountable for any ATVs not listed in the indictment, we conclude that the district court did not abuse its discretion as to the amount of restitution. When ordering restitution in a case involving a conspiracy, a district court "may order restitution for acts of related conduct for which the defendant was not convicted." United States v. Dickerson, 370 F.3d 1330, 1339 (11th Cir. 2004) (quoting United States v. Lawrence, 189 F.3d 838, 846 (9th Cir. 1999))(internal quotation marks omitted). In addition, restitution may be ordered for victims not named in the indictment so long as their harm flowed directly from the conspiracy. See Id. at 1338-39 (collecting cases).[11] We thus have no difficulty concluding that the district court did not abuse its discretion in ordering restitution based on all 25 ATVs, which were either stolen at the same place and time as those listed in the indictment, or ended up in the possession of Wasielak or his convicted co-conspirator.

### III. CONCLUSION

[11]To the extent that Wasielak relies upon Hughey v. United States, 495 U.S. 411, 110 S. Ct. 1979 (1990), his reliance is misplaced. After Hughey, Congress amended the relevant restitution statute with respect to crimes involving schemes and conspiracies. See Mandatory Victims Restitution Act of 1996, Pub L. No. 104-132, 110 Stat. 1227; Crime Control Act of 1990, Pub.L. No. 101-647, 104 Stat. 4789. As this Court has stated, a "survey of the law shows that the [subsequent Congressional action] all but eviscerated Hughey with respect to crimes involving schemes [or conspiracies]." Dickerson, 370 F.3d at 1341.

For all of the above reasons, we find no reversible error and affirm Wasielak's sentence.

AFFIRMED.