[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-10734
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 9, 2012
JOHN LEY
CLERK

D.C. Docket No. 8:09-cr-00509-RAL-AEP-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,


versus

CHRISTOPHER ALAN STAPLETON,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(January 9, 2012)

Before TJOFLAT, EDMONDSON and MARCUS, Circuit Judges.

PER CURIAM:

Christopher Alan Stapleton appeals following his convictions and 84-month total sentence for conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 371 and 1343, and making false statements to a financial institution, in violation of 18 U.S.C. § 1014. At trial, the government introduced evidence showing that Stapleton and others fraudulently misrepresented, in connection with several real estate purchases, the purchase price of the homes and Stapleton's income, and concealed Stapleton's arrangement with the sellers to receive money back at closing, which induced lenders to approve inflated mortgage loans. Over Stapleton's objection under Fed. R. Evid. 404(b), the court permitted the government to also introduce evidence relating to 2008 bankruptcy proceedings in which Stapleton participated.

Stapleton raises two issues on appeal. First, he argues that the district court abused its discretion in admitting the evidence relating to the bankruptcy proceedings because that evidence was not probative of anything except for his bad character. Second, he argues that the district court erred in applying an 18-level increase to his sentence under U.S.S.G. § 2B1.1(b)(1)(J), because its calculation included losses to lenders that were not federally insured. After careful review, we affirm.

I.

We review evidentiary rulings, including the admission of evidence under Rule 404(b), for abuse of discretion. United States v. Ramsdale, 61 F.3d 825, 829 (11th Cir. 1995).

Evidence of a prior bad act may not be admitted as proof of bad character. Fed. R. Evid. 404(b); see also United States v. Cancelliere, 69 F.3d 1116, 1124 (11th Cir. 1995). For evidence to be admissible under Rule 404(b), three requirements must be satisfied: (1) the evidence must be relevant to an issue other than defendant's character; (2) there must be sufficient proof to enable a jury to find by a preponderance of the evidence that the defendant committed the act in question; and (3) the probative value of the evidence cannot be substantially outweighed by undue prejudice, as set forth in Fed. R. Evid. 403. United States v. Edouard, 485 F.3d 1324, 1344 (11th Cir. 2007).

Rule 404(b) does not apply, however, when the evidence "concerns the context, motive, and set-up of the crime and is linked in time and circumstances with the charged crime." Cancelliere, 69 F.3d at 1124 (quotations omitted). Furthermore, Rule 404(b) does not apply to uncharged conduct that: (1) arose out of the same transaction or series of transactions as the charged offense; (2) is necessary to complete the story of the crime; or (3) is "inextricably intertwined" with the charged offense. Edouard, 485 F.3d at 1344. Evidence is inextricably intertwined when "it

3

forms an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted." Id. (quotation omitted); see also Ramsdale, 61 F.3d at 829-30 (holding that Rule 404(b) did not apply to evidence relating to a vehicle stop where drugs were uncovered, during the time frame of the conspiracy to distribute methamphetamine as charged, because that evidence was both inextricably intertwined with the charged offense and "necessary to complete the story" of the defendant's role in the charged offense).

Here, Rule 404(b) did not apply to the evidence relating to the 2008 bankruptcy proceedings. Notably, the indictment charged Stapleton with, among other things, a conspiracy characterized by fraudulent misrepresentations to mortgage lending institutions. The evidence showed that, over the course of the bankruptcy proceedings, Stapleton continued to make fraudulent misrepresentations to the same lenders in connection with the real estate transactions that were enumerated in the indictment and that constituted an integral part of the charged offenses. In particular, at his 11 U.S.C. § 341 creditors' meeting, Stapleton continued to represent that he had purchased some of the homes at issue at their artificially inflated prices, without revealing the price that he actually paid to the sellers or that he had received money at closing in connection with those transactions. Similarly, whereas Stapleton represented in materials sent to lenders that he had a monthly income ranging from

4

$92,000 to $108,000 at the time of the charged transactions, he represented in his bankruptcy petition that his income in 2006 and 2007 was only $25,000. Thus, the evidence related to the bankruptcy proceedings was inextricably intertwined with the charged offenses. In addition, the bankruptcy proceedings arose directly out of Stapleton's fraudulent real estate deals, and the evidence was necessary to complete the story of the offense by informing the jury of the full scope and context of the charged scheme. See Edouard, 485 F.3d at 1344. Accordingly, we conclude that the district court did not abuse its discretion in admitting this evidence.

## II.

We review the district court's interpretation and application of the sentencing guidelines de novo, and its calculation of loss under the guidelines for clear error. United States v. Machado, 333 F.3d 1225, 1227 (11th Cir. 2003).

The guidelines provide for a base offense level of seven for many fraud-related crimes. U.S.S.G. § 2B1.1(a). If the fraud caused a loss of between $2.5 million and $7 million, the offense level increases by 18. U.S.S.G. § 2B1.1(b)(1)(J). Loss is defined as the greater of actual or intended loss, U.S.S.G. § 2B1.1 cmt. n.3(A), and "actual loss" is defined as the "reasonably foreseeable pecuniary harm that resulted from the offense." U.S.S.G. § 2B1.1, cmt. n.3(A)(i). The guidelines instruct courts to estimate loss using a number of factors, including, inter alia, multiplying the

5

number of victims by the loss to each victim; the fair market value of the property; or, if the fair market value cannot be ascertained, "the cost to the victim of replacing that property." U.S.S.G. § 2B1.1 cmt. n.3(C); Machado, 333 F.3d at 1227. Under the guidelines, a victim is "any person who sustained any part of the actual loss." U.S.S.G. § 2B1.1 cmt. n.1. "[P]erson" may refer to "individuals, corporations, [or] companies." Id.

The relevant guidelines describe a "financial institution" as: "any institution described in 18 U.S.C. 20," among other statutes, or "any state or foreign bank, trust company, [or] credit union . . . whether or not insured by the federal government." Id. (emphasis added). At the time of the offense, 18 U.S.C. § 20, the statutory definitions provision that Stapleton invokes in an attempt to limit the scope of a "financial institution" for sentencing purposes, provided a number of definitions, including "an insured depository institution" or "a member bank of the Federal Reserve System." 18 U.S.C. § 20(1), (7), (10) (2009).

In the event of a conflict between a sentencing guideline and a statute, the statute controls. United States v. Moriarty, 429 F.3d 1012, 1024 n.11 (11th Cir. 2005). The Supreme Court has recognized that information that is material during the guilt phase of criminal proceedings is not necessarily material during the sentencing phase. Cone v. Bell, 556 U.S. 449, ___, 129 S.Ct. 1769, 1784 (2009).

There is no conflict here between the sentencing guidelines and any applicable statute. The propriety of the 18-level enhancement imposed by the district court under U.S.S.G. § 2B1.1(b)(1)(J) does not depend on whether the lenders are financial institutions. Section 2B1.1 defines "victims" separately from "financial institutions," U.S.S.G. § 2B1.1 cmt. nn. 1, 3(A), and Stapleton does not challenge the application of any guidelines enhancement that specifically refers to financial institutions. Cf. U.S.S.G. § 2B1.1(b)(15)(A), (B)(i). Stapleton does not dispute on appeal that the lenders he defrauded were "companies" or "corporations," nor does he dispute that the lenders sustained actual losses totaling approximately $4 million. U.S.S.G. § 2B1.1 cmt. n.1. The instructions for estimating loss under § 2B1.1(b)(1) expressly take into account the financial impact to the victim, but do not further take into account whether the victims are financial institutions. See U.S.S.G. § 2B1.1 cmt.

n.3(C).[1]  Accordingly, the district court did not clearly err in applying an 18-level

increase to Stapleton's sentence.

**AFFIRMED.**

---

[1]  Even assuming <u>arguendo</u> that the district court could only consider losses to "financial institutions" as defined in 18 U.S.C. § 20, Stapleton's claim would still fail.  In 2009, before Stapleton's sentencing, Congress amended the statutory definition of "financial institution" to include "a mortgage lending business," which describes the lenders in this case.  18 U.S.C. § 20(10) (2010); <u>see also</u> Pub. L. 111-21, § 2(a), 123 Stat. 1617.  Unless the <u>Ex Post Facto</u> Clause of the Constitution is implicated, "[t]he general rule is that a defendant should be sentenced under the law in effect at the time of sentencing."  <u>United States v. Grimes</u>, 142 F.3d 1342, 1351-52 (11th Cir. 1998).  And although he is aware of this amendment, Stapleton has not raised an <u>Ex Post Facto</u> challenge to its operation, either before the district court or on appeal, and we therefore do not consider the issue.  <u>See</u> <u>Access Now, Inc. v. Southwest Airlines Co.</u>, 385 F.3d 1324, 1330-31 (11th Cir. 2004).