[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15251
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cr-20219-WJZ-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ARSENIO LEON,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(June 23, 2014)

Before PRYOR, MARTIN, and FAY, Circuit Judges.

PER CURIAM:

Arsenio Leon appeals after a jury found him guilty of (1) Count 1: conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349; (2) Counts 2 through 9: health care fraud, in violation of 18 U.S.C. § 1347; (3) Count 10: conspiracy to pay health care kickbacks, in violation of 18 U.S.C. § 371; and (4) Counts 11 through 15: five counts of payment of kickbacks in connection with a federal health care program, in violation of 42 U.S.C. § 1320a–7b(b)(2)(A). Leon first argues the district court erred in denying his motion for a judgment of acquittal on Counts 1 through 9.  He also claims the district court erred in imposing a 16-level loss amount enhancement when determining his sentence.  Because we find no error in either decision, we affirm.

I.

We review de novo the denial of a motion for judgment of acquittal on sufficiency of evidence grounds.  United States v. Friske, 640 F.3d 1288, 1290 (11th Cir. 2011).  "A factual finding will be sufficient to sustain a conviction if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  United States v. Hunt, 526 F.3d 739, 745 (11th Cir. 2008) (emphasis omitted).  The standard is the same whether the evidence is direct or circumstantial.  United States v. Utter, 97 F.3d 509, 512 (11th Cir. 1996).

Leon argues that the district court erred in denying his motion for a judgment of acquittal on Counts 1 through 9, which charged conspiracy to commit health care fraud under 18 U.S.C. § 1349, and health care fraud under 18 U.S.C. § 1347.  To establish a conspiracy, "the government must prove beyond a reasonable doubt (1) that a conspiracy existed; (2) that the defendant knew of it; and (3) that the defendant, with knowledge, voluntarily joined it."  United States v. Vernon, 723 F.3d 1234, 1273 (11th Cir. 2013) (quotation marks omitted).  A jury may find a defendant "guilty of conspiracy if the evidence demonstrates that he knew the 'essential objective' of the conspiracy, even if he did not know all its details or played only a minor role in the overall scheme."  United States v. Guerra, 293 F.3d 1279, 1285 (11th Cir. 2002).  Circumstantial evidence can be used to establish the elements of a conspiracy.  Id.

To prove health care fraud, "the defendant must be shown to have known that the claims submitted were, in fact, false."  United States v. Medina, 485 F.3d 1291, 1297 (11th Cir. 2007).  Claims are false if they "were not medically necessary, or were not delivered to the patients."  See id. at 1304.

Leon claims the government failed to prove that he: (1) conspired with anyone to commit health care fraud; (2) knew the claims were not medically necessary or provided to patients; or (3) knowingly aided in the submission of fraudulent claims.  But viewing the evidence in favor of the verdict, a rational trier

3

of fact could have reasonably found that Leon knowingly conspired to commit, and in fact committed, health care fraud. This conclusion is based on Leon's significant control over his company Discovery Therapy, Inc., (Discovery) and its finances, combined with the fact that Discovery's primary, if not only, activity during this period was paying kickbacks to patients and submitting fraudulent claims.[1]

Leon was the sole owner and president of Discovery. In April 2011, he opened a new bank account for Discovery at J.P. Morgan Chase. Leon was the only signator on the account when it was opened, although he later added and then removed codefendant Yosany Sosa as an additional signator. Four days after opening that separate bank account, Leon registered Discovery as an authorized Medicare services provider with Blue Cross Blue Shield (BCBS), listing himself as the "authorized official." Leon directed that all of the Medicare claim payments that BCBS made to Discovery be directly deposited into the J.P. Morgan Chase bank account he controlled. In April 2011 he also hired DNA Billing to prepare Medicare claims for Discovery. In the contract with DNA, Leon agreed that he had "the sole responsibility for the accuracy of all source information [Discovery] provides DNA, and DNA shall have no obligation to verify or otherwise validate such information."

---

[1] Leon does not challenge his convictions on the charges of conspiracy to pay and actual payment of kickbacks in connection with a federal health care program, Counts 10 through 15.

Between May and August 2011, despite the fact that Discovery only had twelve patients and was a small suite in a strip mall with one examination room, it submitted over a million dollars in claims to BCBS, from which Discovery received $443,000.65 in Medicare claim payments by direct deposit into the J.P. Morgan Chase bank account. With the exception of two deposits totaling $2,000, the only money that ever went into the J.P. Morgan Chase bank account was the $443,000.65 from BCBS. During this time period, Leon made withdrawals or received payments from the account totaling approximately $119,000. There were also retail purchases made from the account to businesses like Macy's, Home Depot, and a grocery store. Notably, only five payments were made from the J.P. Morgan Chase account to pharmaceutical suppliers, for a total of approximately $8,000, despite the fact that Discovery billed BCBS over $1 million for various injections that it claimed were given to Discovery's patients.

Leon was also present at Discovery when a fraud investigator from BCBS came to conduct an audit. There were no patients or medical staff present, despite the fact that it was 1 p.m. on a Monday. The only medication present was a few small vials in a locked refrigerator. Leon told the investigator that he was not able to find the medical records she was requesting because he did not know where they were. Later the fraud investigator received only seven of Discovery's twelve patient files by mail. For each patient there was a cover letter signed by Leon

5

attesting that "the attached records are the complete accurate patient file for the time period requested as it was created at or about [the] time the services were rendered, and that no changes, alterations, or amendments have been [made] to the records" and acknowledging "that [BCBS] of Florida is relying upon this material[] representation in its review of those claims."  But these files did not match the claims Discovery made on behalf of these patients.

Although this evidence is mostly circumstantial, it was sufficient to allow the jury to conclude beyond a reasonable doubt that Leon conspired with his confederates to commit health care fraud and knew the claims submitted to BCBS were not medically necessary or provided to patients.  We therefore affirm his convictions on Counts 1 through 9.

## II.

Leon next argues that the district court clearly erred in imposing a 16-level loss amount enhancement under § 2B1.1(b)(1)(I) of the United States Sentencing Guidelines (USSG) because: (1) the amount billed to BCBS was not a reasonable estimate of the intended loss; and (2) amounts from bills that were faxed from a number that Leon asserts was not associated with himself or with Discovery should not have been included.

We review de novo the district court's interpretation and application of the Sentencing Guidelines, and its calculation of the amount of loss for clear error.

United States v. Machado, 333 F.3d 1225, 1227 (11th Cir. 2003). A 16-level increase applies if the loss exceeded $1,000,000. USSG § 2B1.1(b)(1)(I). According to the Guidelines Commentary, "loss is the greater of actual loss or intended loss." Id. § 2B1.1, comment. (n.3(A)). "Intended loss" is "the pecuniary harm that was intended to result from the offense," even if "impossible or unlikely to occur." Id. § 2B1.1, comment. (n.3(A)(ii)). The defendant is responsible for loss that he "knew or, under the circumstances, reasonably should have known, was a potential result of the offense." Id. § 2B1.1, comment. (n.3(A)(iv)).

Against this legal backdrop, the district court did not clearly err in imposing a 16-level enhancement for a loss amount of over $1,000,000. First, Leon offers no evidence that he intended BCBS to pay—or even knew that they would pay— less than the full $1,244,088.13 in submitted claims, even if BCBS's reimbursement formulas for providers like Discovery made it unlikely or even impossible that BCBS would pay the full amount. USSG § 2B1.1, comment. (n.3(A)(ii)).

Second, we reject Leon's objection to the inclusion in the loss amount calculation of fraudulent bills submitted to DNA Billing on behalf of Discovery that came from an unidentified fax number. As we already explained, based on the evidence presented at trial, the district court did not err in finding by a preponderance that Leon participated in a health care fraud conspiracy with others

to submit fraudulent bills to BCBS.  Although neither party identified this fax number, the bills indicated they were from Discovery, were sent to Discovery's billing agent DNA, and were used to pay money into the bank account Leon controlled.  It was therefore not error for the district court to find by a preponderance that Leon was responsible for the amount of loss attributable to these bills.  There was sufficient evidence to conclude that Leon knew or, under the circumstances, reasonably should have known, that the receipt of fraudulent reimbursements paid into the bank account he controlled for these Discovery bills, whether submitted to his authorized billing agent by himself or his coconspirators, was a potential result of the offense.  See USSG § 2B1.1, comment. (n.3(A)(iv)); see also United States v. McCrimmon, 362 F.3d 725, 732–33 (11th Cir. 2004) (per curiam).

Leon's convictions and sentence are therefore **AFFIRMED.**

8